*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SKURSKY, Minors.

UNPUBLISHED
April 28, 2022

No. 358066
Hilldale Circuit Court
Family Division
LC No. 19-000596-NA

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her six minor children. On appeal, mother argues that the Department of Health and Human Services (DHHS) and the trial court did not comply with the Indian Child Welfare Act, 25 USC 1901 *et seq*. She also argues that the trial court erred when it did not view video recordings of the children's forensic interviews. And she argues that the DHHS did not make reasonable efforts toward reunification. We affirm.

## I. INDIAN CHILDREN WELFARE ACT

First, mother argues that, because the lower court file does not contain proof that the DHHS provided notice of the proceedings to the children's Indian tribe or to the Secretary of the Interior, we should conditionally reverse the order terminating her parental rights so that the necessary findings can be made. Mother's argument lacks merit. The notice requirement of the Indian Children Welfare Act, 25 USC 1291(a), and under Michigan law, MCL 712B.9(1), require that, in child custody proceedings, certain steps must be followed to ensure that an Indian child's tribe is notified of the proceedings and has an opportunity to intervene *if the court knows or has reason to know* that the child or children involved are Native American. In this case, an initial discussion occurred at the preliminary hearing highlighting that the children may be Native American. However, at that same hearing, the prosecutor represented that, in a previous case involving the children, the proper paperwork was sent to the Cherokee Nation, the tribe that father identified, and it replied that the children were not members. Then, at a July 2020 review hearing, both mother and father reported that the children were *not* Native American. Accordingly, the trial

court did not have reason to know that the children were Native American, and mother is not entitled to the relief she seeks on this issue.

## II. VIDEO RECORDINGS

Next, mother argues that the trial court was required under MCL 712A.17b(5) to admit and view video recordings of the children's interviews with the Child Trauma Assessment Center during the motion hearing to admit their statements. Because mother did not raise this issue before the trial court, it is unpreserved. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We, therefore, review mother's claim for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

Mother's argument lacks merit. MCL 712A.17b(2) states that the requirement mother cites applies only to the following proceedings:

> (a) A proceeding brought under section 2(a)(1) of this chapter in which the alleged offense, if committed by an adult, would be a felony under section 136b, 145c, 520b to 520e, or 520g of the Michigan penal code, 1931 PA 328, MCL 750.136b, 750.145c, 750.520b to 750.520e, and 750.520g.

> (b) A proceeding brought under section 2(b) of this chapter.

MCL 712A.2(a)(1) concerns cases in which a juvenile has been accused of a criminal offense. It allows a trial court to maintain jurisdiction over the juvenile for two years beyond the maximum age of the juvenile court's jurisdiction. MCL 712A.2b concerns cases in which a juvenile is accused of violating the Michigan Vehicle Code, MCL 257.1 *et seq*. In this case, the *children* had not been accused of any wrongdoing. Put another way, the statute that mother contends that the trial court violated does not apply in this case by its express terms. Accordingly, mother has failed to demonstrate that the trial court plainly erred.

## III. REASONABLE EFFORTS, STATUTORY GROUNDS, AND BEST INTERESTS

Lastly, mother argues that the DHHS did not make reasonable efforts to reunify the family in light of mother's difficulties with some learning tasks. Because a "contention that reasonable services were not offered ultimately relates to the issue of sufficiency," *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005), we also construe mother's argument as one challenging the statutory grounds for termination and whether termination was in the children's best interests.

This Court reviews for clear error a trial court's finding that reasonable efforts were made to preserve and unify a family. *Id*.

> The clear-error standard controls our review of both the court's decision that clear and convincing evidence supported a ground for termination and that termination served the children's best interests. Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake. In

reviewing the circuit court's decision, we also must give due regard to the trial court's special opportunity to observe the witnesses. [*In re Dearmon*, 303 Mich App 684, 699-700; 847 NW2d 514 (2014) (quotation marks and citations omitted.]

The trial court must find at least one of the statutory grounds for termination by clear and convincing evidence in order to terminate parental rights. *In re Gonzalez/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). If this Court finds that the trial court did not clearly err as to the existence of one ground for termination, this Court need not address any additional termination grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Additionally, "[e]ven if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzalez/Martinez*, 310 Mich App at 434.

## A. REASONABLE EFFORTS

Generally, during the dispositional phase, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks*, 500 Mich at 85-86. The case service plan must include, in relevant part, a schedule of services "to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." MCL 712A.18f(3)(d); see also *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). The parent should be given a reasonable time to make changes and benefit from services before termination of parental rights. See *Mason*, 486 Mich at 159. The trial court should regularly update the plan to account for the parent's progress and developing needs. *Id*. at 156.

Mother argues that the DHHS failed to make reasonable efforts to reunify the family in light of what she refers to as her "intellectual weaknesses." The record does not support mother's argument.

Mother's argument appears to be premised on the understanding that mother has an intellectual disability and that the DHHS did not conform its offered services to this disability. This is not supported by the record. Dr. Randall Haugen testified that mother was "below average" in understanding verbal communication," but he never diagnosed mother with a learning disability. Mother also represents that she performed better with services when information was verbally communicated to her—which goes against Dr. Haugen's testimony. Although mother argues that she needed more "hands on" opportunities, the referee acknowledged Renee Moore's testimony that mother was successful in the domestic violence curriculum, learning that domestic violence is more than physical harm. As mother acknowledges, the referee, on the other hand, was the most concerned with mother's reluctance to accept or unwillingness to believe the children and recognize the children's complex traumas. Without this acceptance, the referee believed that there

were no efforts the DHHS could make, in a reasonable time given the children's ages, that would rectify the barriers to reunification.

## B. STATUTORY GROUNDS

Mother's parental rights were terminated pursuant to MCL 712A.19b(3)(c), (g), and (j). Having reviewed the record, we are satisfied with the referee's findings under subdivision (j). See *HRC*, 286 Mich App at 461 (explaining that this Court need only conclude that the trial court did not clearly err as to the existence of one ground for termination).

Termination of parental rights under MCL 712A.19b(3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." See also *Gonzalez/Martinez*, 310 Mich App at 433-434. This statutory factor considers not only the harm that may result from the parent's conduct toward the child, but also harm that might reasonably result from the parent's conduct around the child, such as exposing a child to individuals with criminal backgrounds who might exploit the children or otherwise place them at risk. See *In re White*, 303 Mich App 701, 712; 846 NW2d 61 (2014). A parent's "lengthy period of instability" stemming from mental-health issues, combined with a present and "continuing lack of judgment, insight, and empathy" for a child is also relevant to this statutory ground. *Utrera*, 281 Mich App at 25. This Court has recognized that subdivision (j) considers not only the prospect of physical harm, but also the risk of emotional harm. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Harm may also include the prospect that the parent's behavior would negatively influence the children. See *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). The trial court must "scrutinize the likelihood of harm if the child were returned to the parent's home" at the conclusion of the child protective proceedings, not at that exact moment in time. See *In re Pops*, 315 Mich App 590, 600; 890 NW2d 902 (2016).

The record reflects that mother only left her relationship with father about one month before the termination hearing. The record reflects that mother still did not believe the children's accusations of sexual abuse and did not accept their complex traumas as real. Dr. James Henry testified that the children needed caregivers who believed them "yesterday" and would support their journey of overcoming their traumas. But more than one year has passed since the children had made their accusations and mother, at the time of termination, still did not believe them. Dr. Henry testified that, regardless whether mother knew about the children's alleged abuse, she failed to protect them from it. In other words, the record supported the trial court's finding that returning to mother's care presented a risk of emotional harm to the children.

## C. BEST INTERESTS

The record supports the trial court's findings in regard to the children's best interests. The same considerations already discussed were central to the referee's best-interest findings: mother still did not believe the children's allegations or accept their complex traumas as real. The record reflects that all the children, except one who was removed a few days after his birth and was still an infant, exhibited hypersexual behaviors associated with sexual abuse. Witnesses testified that the children needed permanency, stability, and support in overcoming their traumas. The children

were receiving these things in their foster homes. But, as the referee was centrally concerned about, mother had not demonstrated a willingness to believe the children.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan